United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN GEIB,

               Plaintiff,

      v.

JACOBS TECHNOLOGY INC.,

               Defendant.

Case No.  23-cv-00169-AMO

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 33

This is a putative class action involving claims of wage and hour violations, which Defendant Jacobs Technology, Inc. ("Jacobs") argues are barred by the federal enclave doctrine. Before the Court is Jacobs's motion for summary judgment or, in the alternative, partial summary judgment on that basis. In accordance with the Court's instruction, Jacobs did not notice the motion for a hearing. *See* ECF 30, ECF 32. The matter is fully briefed and suitable for decision without oral argument. *See* Civ. L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Jacobs's motion.

## I.      BACKGROUND

Plaintiff John Geib ("Geib") worked as a Building Maintenance Support Technician for Jacobs pursuant to Jacobs's contract with the National Aeronautics and Space Administration ("NASA"). Geib repaired and maintained NASA facilities at Ames Research Center, located within Moffett Field, California.

### A.     Moffett Field History

"Moffett Field was acquired by the United States under an Act of Congress[.]" *Pac. Coast Dairy v. Dep't of Agric. of Cal.*, 318 U.S. 285, 293 (1943); *see also* Act of February 12, 1931,

c. 122, 46 Stat. 1092.  The Act authorized the Secretary of the Navy to "accept on behalf of the United States, free from encumbrance and without cost to the United States, a title in fee simple to such lands he may deem necessary or desirable near Sunnyvale, in the county of Santa Clara, State of California . . . One [*sic*] thousand acres as a site for a naval air station[.]"  Act of February 12, 1931, c. 122, 46 Stat. 1092.  That tract "is now called Moffett Field."  *Pac. Coast Dairy*, 318 U.S. at n.7.  In 1994, the Department of the Navy transferred all land, buildings, facilities, infrastructure, and other property at Moffett Field to the NASA.  Request for Judicial Notice ("RJN"), Ex. 5.  Moffett Field was "retained as [a] Federal facilt[y] for joint use by NASA, the Department of Defense (DOD), and other federal entities."  *Id.*, Ex. 5 at 1.  NASA's Ames Research Center is located in Moffett Field.  *See* 14 C.F.R. § 1204.1401(b)(1).

**B.    Jacobs's Work at Moffett Field**

Jacobs provides a full spectrum of professional services, including consulting, technical, scientific, and project delivery for the government and private sector.  Farhat Decl. (ECF 34) ¶ 3.  On October 30, 2015, Jacobs contracted with NASA to provide various maintenance, environmental, and emergency services at NASA Ames Research Center, Moffett Field, California (the "Ames Facilities Support Services Contract").  Farhat Decl. ¶ 4, Ex. 1 at 1 and §§ B.2, F.4.  From October 2018 to present, NASA exercised its contractual options to extend the contract period, and Jacobs continues to provide services to NASA pursuant to the Ames Facilities Support Services Contract.  Farhat Decl. ¶ 4.

From July 27, 2018, until November 24, 2021, Jacobs employed Geib as a full-time Building Maintenance Support Technician in its Government Operations Directorate, supporting the Ames Facilities Support Services Contract.  Farhat Decl. ¶¶ 5, 11, Ex. 2.  Geib and other technicians performed equipment and buildings general maintenance and repair as well as general roads and grounds maintenance.  Farhat Decl. ¶ 5, Ex. 3.  Jacobs's records do not reflect any work by Geib outside Moffett Field.  Farhat Decl., ¶¶ 7-9, Exs. 6-7.

**C.    Procedural Background**

On December 5, 2022, Geib filed a complaint in state court alleging the following causes of action under California law:

2

1    (1) Failure to Pay for All Hours Worked (Labor Code §§ 1194, 1194.2, 1198);

2    (2) Failure to Reimburse Business Expenses (Labor Code § 2802);

3    (3) Failure to Provide Complete Wage Statements (Labor Code § 226 and 226.3);

4    (4) Waiting Time Penalties (Labor Code § 201-203);

5    (5) Failure to Pay All Overtime Wages Owed (Labor Code §§ 510, 1194, 1194.2, 1198,

6    and Wage Order);

7    (6) Unlawful Deductions from Pay (Labor Code §§ 221, 223, 400-410);

8    (7) Failure to Pay for On-Call Time;

9    (8) Private Attorney Generals Act ("PAGA") and Other Penalties (Labor Code §§ 2699, et

10   seq., and 558); and

11   (9) Unfair Competition in Violation of California Business and Professions Code §17200,

12   et seq.

13   *See* ECF 1.  Jacobs removed the case to this Court on January 12, 2023.  *Id.*

## II.    DISCUSSION

15   Jacobs moves for summary judgment on all of Geib's causes of action on the basis that the

16   claims are either barred by the federal enclave doctrine or inapplicable in Moffett Field, a federal

17   enclave.  ECF 33.[1]

### A.    Legal Standard

19   A party may move for summary judgment on a "claim or defense" or "part of . . . a claim

20   or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine

21   dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*

22   The party seeking summary judgment bears the initial burden of informing the court of the basis

23   for its motion, and of identifying those portions of the pleadings and discovery responses that

24   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

25   317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v.*

---

[1] Both sides filed requests for judicial notice of certain materials in support of their briefs.  *See* ECF 35; ECF 36-1.  Neither party objected to the other's request for judicial notice.  The Court accordingly GRANTS both requests as unopposed.

United States District Court
Northern District of California

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).  Indeed, where the nonmoving party bears the burden of proof at trial, its burden of production in opposing a motion for summary judgment " 'is not a light one' – it 'must show more than the mere existence of a scintilla of evidence' or 'some "metaphysical doubt" as to the material facts at issue.' "  *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

### B.      Federal Enclave Doctrine

Article I, Section 8, Clause 17 of the United States Constitution authorizes Congress "To exercise exclusive Legislation in all Cases whatsoever. . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines,

United States District Court
Northern District of California

Arsenals, dock-Yards, and other needful Buildings."  "Thus if the United States acquires with the 'consent' of the state legislature land within the borders of that State by purchase or condemnation for any of the purposes mentioned in Art. I, s 8, cl. 17, or if the land is acquired without such consent and later the State gives its 'consent,' the jurisdiction of the Federal Government becomes 'exclusive.' "  *Paul v. United States*, 371 U.S. 245, 264 (1963).

At its core, Jacobs's motion for summary judgment asserts that California wage and hour laws do not apply to jobs performed on federal enclaves.  Jacobs specifically argues that each of Geib's state law causes of action fail because (1) Geib's place of employment was a federal enclave; (2) Geib's state law claims arise from his work on the federal enclave, and (3) the federal enclave doctrine bars Geib's claims because they rely on state law enacted or substantially altered since the time Moffett Field became a federal enclave.  Geib contests almost all of Jacobs's arguments.  The Court takes up each issue in turn.

### 1.    Moffett Field is a Federal Enclave

Here, there is no dispute that Moffett Field became a federal enclave in 1931.  *Pac. Coast Dairy v. Dep't of Agric. of Cal.*, 318 U.S. 285, 293 (1943) (describing federal enclave status of Moffett Field); *see also* 71 Cong. Ch. 122, February 12, 1931, 46 Stat. 1092 (authorizing purchase of 1000 acres to build an air base in "near Sunnyvale In the County of Santa Clara").  Yet Geib avers without support that Moffett Field is not a federal enclave in its entirety and that his claims may rise from a portion of Moffett Field exempted from the federal enclave doctrine.  *See* Opp. at 6 (ECF 36 at 11) ("It is possible that not all of the units of land relevant to this action are part of the federal enclave.").  Such speculation constitutes nothing more than "metaphysical doubt" insufficient to raise a genuine issue of fact.  *Pac. Gulf Shipping Co.*, 992 F.3d at 897.  The Court follows the lead of others in this District and concludes that Moffett Field is a federal enclave. *See, e.g.*, *Hunter v. ASRC Fed. Data Sols., LLC*, No. 23-CV-02974-JSC, 2023 WL 4983668, at *2 (N.D. Cal. Aug. 3, 2023) ("Given general public knowledge, consistent caselaw, and Plaintiff's failure to dispute that Moffett Field is, in fact, a federal enclave, the Court takes judicial notice that Moffett Federal Air Field became a federal enclave in 1931." (citing *Pac. Coast Dairy*, 318 U.S. 285, 293 (1943)).

2.      **Geib's Claims Arise from the Federal Enclave**

Geib concedes that Moffett Field is "the general location of events relevant here" and that Moffett Field is a federal enclave.  *See, e.g.*, Opp. at 1, 8.  Geib postulates, however, that not all of the events underlying his claims took place on federal enclave land because (1) the policies and business decisions underlying Geib's wage claims may have taken place at Jacobs's Tennessee corporate headquarters, and (2) at least some of his wage claims are based on his hours spent on-call without compensation, which took place off site.  Both of Geib's arguments fail.

"In determining whether a claim arises on a federal enclave, district courts look to see where all the 'pertinent events' took place."  *Jimenez v. Haxton Masonry, Inc.*, No. 18-CV-07109-SVK, 2020 WL 3035797, at *4 (N.D. Cal. June 5, 2020) (citing *Rosseter v. Indus. Light & Magic*, No. C 08-04545 WHA, 2009 WL 210452, at *2 (N.D. Cal. Jan. 27, 2009)).  "A plaintiff's place of employment is the significant factor in determining where the plaintiff's employment claims arose under the federal-enclave doctrine."  *Haining v. Boeing Co.*, No. 2:12-CV-10704-ODW, 2013 WL 4874975, at *3 (C.D. Cal. Sept. 11, 2013) (citation omitted).  Importantly, "[t]he enclave's law governs the employment claims of an employee of a federal contractor operating on a federal enclave."  *Id.* at *3.

Geib's first argument, that the federal enclave doctrine does not apply because the decisions on which his employment claims are based took place offsite in Tennessee, fails because the pertinent events of his employment occurred at Moffett Field, his worksite.  The location where decisions concerning his employment were made does not alter the conclusion.  *See Powell v. Tessada & Assocs., Inc.*, No. C 04-05254-JF, 2005 WL 578103, at *2 (N.D. Cal. Mar. 10, 2005) ("[R]egardless of where the decision not to retain plaintiff was made, the decision reflects Defendant's employment practice on the enclave."); *see also Haining v. Boeing Co.*, No. 2:12-CV-10704-ODW, 2013 WL 4874975, at *3 (C.D. Cal. Sept. 11, 2013).  Here, Geib worked at Moffett Field as part of Jacobs's Ames Facilities Support Services Contract.  Farhat Decl., ¶¶ 4, 5, 11, Ex. 2.  Because Geib's claims arose where the "pertinent events" of his employment took place, his claims arose in a federal enclave.  *See Jimenez*, 2020 WL 3035797, at *4.

Geib's second argument, that his claims related to unpaid wages for on-call time arose somewhere else, also fails.  The matter of *Jimenez v. Haxton Masonry, Inc.* is instructive.  In that case, a California concrete finisher who worked on federal enclaves brought state wage and hour claims in part to collect unpaid wages for the time he spent driving between federal enclave jobsites.  *Jimenez*, 2020 WL 3035797, at *2.  The court determined that the pertinent events of the employee's work for a federal contractor took place on the federal enclaves, and the plaintiff's driving in between sites did not alter the situs of his jobsite for purposes of applying state employment law.  *Id.* at *5.

Here, the pertinent events of Geib's employment took place at Moffett Field.  *See* Farhat Decl. ¶¶ 4, 5.  While the Court must draw reasonable inferences in Geib's favor as the nonmoving party, the Court cannot draw an inference from his allegations that the events underlying his claims occurred somewhere other than Moffett Field.  Geib must proffer admissible evidence to suggest that the events took place outside of Moffett Field, and he fails to do so.  Moreover, Geib fails to provide authority for the premise that the physical location where he spent his on-call time somehow alters the fact that the pertinent events of his employment took place at Moffett Field.  Because Geib's place of employment was Moffett Field, his claims arise from his work on a federal enclave, and the federal enclave doctrine applies to his claims.

### 3.    The Federal Enclave Doctrine Bars Geib's State Law Claims

Having found that Moffett Field is a federal enclave and that Geib's claims arise from his employment at Moffett Field, the Court turns to assess whether the federal enclave doctrine effectively bars his state law claims.  Unless altered by Congress, the laws applicable to a federal enclave include (i) federal law and (ii) state laws that were in effect at the time of cession and are not inconsistent with federal law.  *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citing *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940)).  "On federal enclaves, in the absence of federal legislation displacing state law, those state laws that existed at the time that the enclave was ceded to the federal government remain in force."  *Albers v. Yarbrough World Sols., LLC*, No. 5:19-CV-05896-EJD, 2020 WL 2218964, at *7 (N.D. Cal. May 7, 2020) (citing *Paul v. United States*, 371 U.S. 245, 268 (1963) ("Laws subsequently

United States District Court
Northern District of California

1    enacted by the state are inapplicable in the federal enclave unless they come within a reservation

2    of jurisdiction or are adopted by Congress.")).  "Three exceptions exist to this rule: (1) where

3    Congress has, by statute, provided a different rule; (2) where the state explicitly retained the right

4    to legislate over specific matters at the time of cession; and (3) where minor regulatory changes

5    modify laws existing at the time of cession."  *Albers*, 2020 WL 2218964, at *7 (citing *United

6    States v. Sharpnack*, 355 U.S. 286, 294-95 (1958)).

7         As noted above, Moffett Field became a federal enclave in 1931.  *See Pac. Coast Dairy*,

8    318 U.S. at 293.  By 1931, the California Legislature enacted four cession statutes consenting to

9    exclusive federal jurisdiction in various circumstances.  *See* Request for Judicial Notice ("RJN")

10   Exs. 1-4.  California did not explicitly retain the right to legislate labor laws in federal enclaves –

11   none of the cession statutes reserved any rights to California except for the right to serve criminal

12   and civil process.  *Id.*  Geib cites no Congressional statute providing for a different rule regarding

13   state law's application in Moffett Field.  Accordingly, two of the three exceptions identified in

14   *Albers* are relevant here: whether the state law existing at the time of cession remains sufficiently

15   intact and whether Congress has expressed a different rule than that provided by state law.

### a.    State Laws Adopted Prior to Federal Acquisition of Moffett Field

18        The Court must assess whether the laws underpinning Geib's claims existed at the time of

19   cession, and, if they did exist at the time of cession, whether the contemporary laws upon which

20   Geib relies have been modified with only minor changes.  The Court is guided in this assessment

21   by the matter of *Paul v. United States*, 371 U.S. 245 (1963), in which the Supreme Court

22   considered the limits of changes to existing laws before they create a new state legal scheme that

23   is no longer applicable to federal enclaves.  *Id.* at 268 ("Laws subsequently enacted by the state

24   are inapplicable in the federal enclave unless they come within a reservation of jurisdiction or are

25   adopted by Congress.").  There, the Court considered whether a price control on milk enacted by

26   the state of California applied on various military bases in the state as federal enclaves.  The

27   Supreme Court concluded, "[T]he current price controls over milk are applicable to [milk sales],

28   provided the basic state law authorizing such control has been in effect since the times of these

United States District Court
Northern District of California

[military base] acquisitions." *Id.* at 269. Importantly, "basic state law" as used in *Paul* must be narrowly interpreted to prevent the prior state law exception from overwhelming the federal enclave constitutional rule. *See Allison v. Boeing Laser Technical Services*, 689 F.3d 1234, 1243 (10th Cir. 2012) (finding changes in state labor law related to wrongful termination not applicable in federal enclave). *Paul* allowed only administrative changes to the price of milk under a legislative scheme that existed prior to the establishment of a federal enclave. *Paul* did not contemplate substantive legislative changes to the program itself.

Before assessing the effective date and substantive changes to the law of each of Geib's claims, the Court first notes Geib's concession that the federal enclave doctrine bars several of his claims because the laws did not exist in 1931. Geib concedes that the laws underlying his third cause of action for failure to provide complete wage statements (Labor Code § 226), his fifth cause of action for failure to pay all overtime wages owed (Labor Code § 510),[2] and his sixth cause of action for unlawful deductions from pay (Labor Code §§ 221, 223, 400-410) all postdate 1931. *See* Opp. at 2-3 n.1. The Court agrees and GRANTS Jacobs's motion as to the third, fifth, and sixth causes of action.

The Court turns to address the potential application of the federal enclave doctrine here, including (1) whether the claim existed before the enclave was created and (2) whether the state law, though pre-cession, is inconsistent with federal laws.

### i.    First and Seventh Claims

The Court begins with consideration of Geib's first and seventh causes of action. Although pleaded as a different cause of action, the theory underlying the seventh claim for "failure to pay for on-call time" is the same as in Geib's first claim for minimum wage. Compl. ¶¶ 94-98. Geib alleges that he was required to be "on-call" for extended periods and his "on-call" time should have been compensated at no less than the minimum wage. Compl. ¶ 96.

---

[2] Geib's brief only concedes preemption of his claim under Labor Code § 510, but the remainder of the code sections listed in his fifth cause of action, including Labor Code §§ 1194, 1194.2, and 1198, similarly do not apply because they were not enacted until 1937 at the earliest. *See Jimenez v. Haxton Masonry, Inc.*, No. 18-CV-07109-SVK, 2020 WL 3035797, at *5 (N.D. Cal. June 5, 2020).

United States District Court
Northern District of California

1    For these two claims, Geib relies on the minimum wage requirements expressed in

2    California Labor Code sections 1194, 1194.2, and 1198.  Of these three statutes, Labor Code

3    section 1194 has the earliest antecedents.  "Section 1194 is the direct successor of, and its

4    operative language comes immediately from, section 13 of the uncodified 1913 act (Cal. Stats.

5    1913, ch. 324, § 13, p. 637) that created the IWC."  *Martinez v. Combs*, 49 Cal. 4th 35, 52 (2010),

6    as modified (June 9, 2010).  But at its inception, California's Industrial Welfare Commissioner

7    ("IWC") regulated "the hours, wages and labor conditions of women and minors."  *Martinez*, 49

8    Cal. 4th at 54 (citing Cal. Stats. 1913, Ch. 324).  It was not until 1972 and 1973 that the California

9    Legislature "amended the applicable provisions of the Labor Code to authorize the IWC to

10   establish minimum wages, maximum hours and standard conditions of employment for all

11   employees in the state, men as well as women."  *Indus. Welfare Com. v. Superior Ct.*, 27 Cal. 3d

12   690, 701 (1980).  Geib is neither a woman nor a minor and the 1913 antecedent of Labor Code

13   section 1194 would not apply to him.  Farhat Decl. ¶ 10.  The expansion of minimum wage

14   protections in California since 1931, including by adding such a significant portion of the

15   population to such protections and introducing a private right of action to enforce minimum wage

16   protections, represents substantive legislative changes to the scheme in place at the time Moffett

17   Field became a federal enclave.  *See Martinez*, 49 Cal. 4th at 56 (discussing the changes to

18   minimum wage enforcement since 1913).  California Labor Code sections 1194.2 and 1198 cannot

19   salvage these claims.  Compl. ¶¶ 51, 54.  California enacted these statutes in 1991 and 1937

20   respectively.  *See* Cal. Stats. 1991, Ch. 825 (S.B. 955), § 3 (RJN, Ex. 6); Cal. Stats. 1937, Ch. 90,

21   p. 217, § 1198 (RJN, Ex. 7).  Geib's minimum wage claims accordingly fail because they are not

22   cognizable under California law as it existed before the 1931 cession of Moffett Field.  The Court

23   GRANTS Jacobs's motion as to the first and seventh causes of action.

24              **ii.        Fourth Cause of Action: Waiting Time Penalties**

25   Geib's fourth cause of action for waiting time penalties seeks relief under California Labor

26   Code sections 201, 202, and 203.  Compl. ¶¶ 70-73.  California Labor Code sections 201-203

27   regulate the payment of final wages at the time of an employee's discharge or resignation and

28   imposes a penalty on employers who refuse to comply.  The earliest antecedent of sections 201,

1 | 202, and 203, Assembly Bill No. 187, passed in 1919 and thus pre-dates cession of Moffett Field
2 | as a federal enclave. *See* Cal. Stats. 1919, Ch. 202 (RJN, Ex. 10). Jacobs argues that the federal
3 | enclave doctrine still bars enforcement of these state statutes because they represent a statutory
4 | change far different than the law in place in 1931.

5 | Here, the version of the statute in effect immediately before 1931 lacked a private right of
6 | action – it assigned enforcement duties to the commissioner of the bureau of labor statistics. Cal.
7 | Stats. 1919, Ch. 202 (RJN, Ex. 10). The statutory change permitting a private right of action to
8 | enforce waiting time penalties is not the type of minor regulatory change contemplated in *Paul*.
9 | Rather, the creation of a private right of action represents a substantive change to the statute itself.
10 | *See Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010) ("[W]hether a party has a
11 | right to sue depends on whether the Legislature has manifested an intent to create such a private
12 | cause of action under the statute." (citation and internal quotations omitted)). Because Geib seeks
13 | to vindicate a statutory right that did not exist prior to 1931, the federal enclave doctrine bars this
14 | claim. The Court GRANTS Jacobs's motion as to the fourth cause of action.

15 | ### iii.        Eighth Cause of Action: PAGA

16 | Geib's eighth cause of action for PAGA and other penalties fails because the California
17 | Legislature enacted PAGA in 2003, introducing a statutory scheme for private enforcement that
18 | did not exist prior to 1931. *See* Cal. Lab. Code § 2698. Seeking to avoid this obvious conclusion,
19 | Geib cites to two federal statutes authorizing state enforcement of worker's compensation (40
20 | U.S.C. § 3172) and unemployment compensation (26 U.S.C. § 3305) laws to argue that PAGA
21 | enforcement is somehow also authorized in federal enclaves. However, the plain text of the
22 | statutes refutes any interpretation that, because the State of California may enforce those statutes
23 | in federal enclaves, so can a private attorney general acting to enforce the Labor Code more
24 | broadly – the statutes limit even the State of California's enforcement to specific subjects. *See* 40
25 | U.S.C. § 3172(b) ("The Government under this section does not relinquish its jurisdiction for any
26 | other purpose"); 26 U.S.C. § 3305(d) ("No person shall be relieved from compliance with a State
27 | unemployment compensation law on the ground that services were performed on land or premises
28 | owned, held, or possessed by the United States"). Geib's strained interpretation of distinct federal

1    statutes does not circumvent the federal enclave doctrine's application to bar a statutory scheme

2    adopted well after 1931.  The Court GRANTS Jacobs's motion as to the eighth cause of action.

3                        **b.      State Laws Inconsistent with Federal Laws**

4            Even pre-cession state law may only be enforced in a federal enclave so long as it does not

5    conflict with federal policy.  *See Parker Drilling*, 587 U.S. at 612.  In *Parker Drilling*, the

6    Supreme Court held that pre-cession state law cannot apply in a federal enclave if federal law

7    addresses the issue at hand because "state law addressing the same issue would necessarily be

8    inconsistent with existing federal law and cannot be adopted as surrogate federal law."  *Id.* at 610.

9    Put simply, state laws are inapplicable on a federal enclave when federal law provides coverage

10   for a particular issue.  *Id.* at 616.

11           Geib's second cause of action for failure to reimburse business expenses seeks relief under

12   California Labor Code section 2802.  Jacobs acknowledges that an antecedent to Labor Code

13   section 2802 existed prior to 1931 but argues that this state law conflicts with federal policy

14   enshrined in the Fair Labor Standards Act ("FLSA").  *See* Mot. at 6.  Geib counters that Labor

15   Code section 2802's reimbursement provisions do not conflict with the FLSA, which only

16   precludes reductions of compensation that cause compensation to fall below the minimum wage

17   requirements.  *See* Opp. at 15 (citing *Mersnick v. USProtect Corp.*, No. C-06-03993 RMW, 2006

18   WL 3734396 (N.D. Cal. Dec. 18, 2006)).  However, Geib's reliance on *Mersnick* is misplaced

19   because that court found that the federal enclave doctrine barred plaintiff's California Labor Code

20   claims where they conflicted with the FLSA.  *Id.*, 2006 WL 3734396, at *9.  Moreover, Geib fails

21   to confront a more recent case cited by Jacobs in which a district court found Labor Code

22   section 2802 inconsistent with FLSA regulations and concluded that the federal enclave doctrine

23   barred claims brought pursuant to that section.  *See* Mot. at 6-7 (citing *Jimenez v. CRC Prop.*

24   *Mgmt. W. Inc.*, No. 319CV01547JAHMSB, 2021 WL 4312622, at *6 (S.D. Cal. Sept. 21, 2021)).

25   The *Jimenez* court expressly considered *Parker Drilling* and acknowledged that the FLSA has

26   already addressed the reimbursement issue such that Congress provided a different rule than the

27   one in place prior to 1931.  *Id.* at *6.  The Court finds *Jimenez*'s reasoning persuasive and thus

28

United States District Court
Northern District of California

1    concludes that the federal enclave doctrine bars Geib's state law claim for failure to reimburse.

2    The Court GRANTS Jacobs's motion as to the second cause of action.

3       **C.**  **Ninth Cause of Action: Unfair Competition Law**

4       Finally, Geib brings his ninth cause of action for unfair competition under California

5    Business and Professions Code section 17200.  This claim is derivative of Geib's other state law

6    claims.  Thus, like them, it too fails.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

7    20 Cal. 4th 163, 167 (1999) ("A court may not allow a plaintiff to plead around an absolute bar to

8    relief simply by recasting the cause of action as one for unfair competition."); *see also Mersnick*,

9    2006 WL 3734396, at *10 (barring a UCL claim derived from state wage law claims because the

10   federal enclave doctrine barred the state wage law claims).[3]  The Court GRANTS Jacobs's motion

11   as to the ninth cause of action.

12      **D.**  **Additional Discovery**

13      Geib appears to make an alternative request to deny this motion and order additional

14   discovery "since some units of land at Moffett Field might not be part of the enclave."  Opp. at 7-

15   8.  Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary

16   judgment when they have not had sufficient time to develop affirmative evidence."  *Langer v.*

17   *Encantado II, LLC*, 677 F. App'x 360 (9th Cir. 2017) (quoting *United States v. Kitsap Physicians*

18   *Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002), internal quotation marks omitted).  "To prevail under

19   this Rule, parties opposing a motion for summary judgment must make (a) a timely application

20   which (b) specifically identifies (c) relevant information, (d) where there is some basis for

21   believing that the information sought actually exists."  *Id.* (quoting *Emp'rs Teamsters Local Nos.*

22   *175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (internal

23   quotation marks omitted). "The burden is on the party seeking a Rule 56(d) continuance 'to proffer

24   sufficient facts to show that the evidence sought exists, and that it would prevent summary

25   judgment.' "  *Atay v. Cty. of Maui*, 842 F.3d 688, 698 (9th Cir. 2016) (citation omitted).

26

27     _____

28   [3] Though the parties dispute in part whether Section 17200 postdates Moffett Field cession
because it was enacted in its current form in 1977, *see* Cal. Stats. 1977, Ch. 299, p. 1202, § 1
(RJN, Ex. 15), the Court need not reach this issue because this claim is otherwise barred.

*United States District Court*
*Northern District of California*

Here, Geib has not met any of the criteria for a Rule 56(d) continuance.  Geib already obtained written discovery on the federal enclave issue.  *See* Reply Choi Decl. ¶¶ 2-3.  Geib cites no record evidence to suggest that any portion of Moffett Field is not part of the federal enclave. Moreover, Geib does not identify any relevant information he would pursue if granted further discovery.  Geib fails to meet his burden to establish that a Rule 56(d) continuance is warranted. The Court DENIES his request.

III.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Jacobs's motion for summary judgment.


        **IT IS SO ORDERED.**

Dated: September 30, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**